**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **KENT WILLIAMS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **Civil Action No. 3:04-CV-2696-K** |
| **v.** | § | |
| | § | |
| **WESTWAY FORD[1] and** | § | |
| **GEORGE HERRON,** | § | |
| | § | |
| **Defendants.** | § | **Pretrial Management** |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Pursuant to the District Court's *Order of Reference*, filed March 13, 2006, this case was referred to this Court for pretrial management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations to the District Court on dispositive motions. Before the Court are the following:

(1)     *Defendants' Motion for Summary Judgment* ("MSJ"), filed January 20, 2006;

(2)     *Appendix Filed in Support of Defendants' Motion for Summary Judgment* ("MSJ App."), filed January 20, 2006;

(3)     *Plaintiff*['s] *Respon*[se] *to Summary Judgment,*[2] filed February 8, 2006;

(4)     *Plaintiff*['s] *Respon*[se] *to Summary Judgment* ("Resp."), filed February 9, 2006;

(5)     *Defendants' Objections and Motion to Strike Plaintiff's Evidence Filed in Response to Defendant's Motion for Summary Judgment and Brief in Support Thereof,* filed February 24, 2006;

---

[1]Defendant Westway Ford indicates in its motion that it was incorrectly named in Plaintiff's suit as "West Way Ford."  (MSJ at 1.)

[2]This filing appears to consist exclusively of a certificate of service, filed separately from Plaintiff's response to Defendants' motion.

(6)     *Defendants' Reply Brief in Support of Their Motion to Dismiss* ("MSJ Reply"), filed February 24, 2006;

(7)     *Plaintiff*['s] *Objection to Defendants Motions to Strike Plaintiff* ['s] *Evidence Filed in Response to Plai*[n]*tiff*['s] *Motion for Summary Judgment*, filed March 21, 2006;

(8)     *Plaintiff*['s] *Reply Brief in Support of His Motion for Summary Judgment*, filed March 21, 2006;

(9)     *Defendants' Motion to Strike Plaintiff's "Objection to Defendants' Motions to Strike Plaintiff's Evidence Filed in Response to Plaintiff's Motion for Summary Judgment*[,]*"* filed March 27, 2006;

(10)    *Defendant's Motion to Strike Plaintiff's Sur-Reply in Opposition to Motion for Summary Judgment*, filed March 27, 2006;

(11)    *Plaintiff*['s] *Motion to Strike Defendant's Ob*[j]*ection to Plaintiff*['s] *[E]vidence [F]iled in [R]espon*[s]*e to Plaintiff*['s] *[M]otion for [S]ummary Judgment: This is the Plaintiff*['s] *Sur-Reply*, filed April 6, 2006; and

(12)    *Defendants' Motion to Strike Plaintiff's Motion to Strike*, filed April 14, 2006.

Having reviewed the pertinent filings above and the law applicable to the issues raised, the Court finds that the motion for summary judgment should be **GRANTED,** and that the motions to strike should be **DENIED** as moot.

## I.  BACKGROUND

Plaintiff Kent Williams ("Plaintiff") began to work for Defendant Westway Ford ("Westway") as a paint shop helper on November 10, 2003.  (Compl. at 1; MSJ at 2.)  In December 2003, Body Shop Manager George Herron ("Herron") transferred Plaintiff to the position of Body Shop Technician, the position for which Plaintiff had originally applied.  (Compl. at 1; MSJ at 2.)

The Inter-Industry Conference on Auto Repair ("I-CAR") certification agency has certified the Westway Body Shop as an I-CAR Gold Class Professional shop.  (MSJ Br. at 5.)  In order to retain this certification, Westway Body Shop employees must reach a certain level of certification

within six months of their hire date.  On his application, Plaintiff stated that he had attained his I-CAR Collision Repair 3000 certification.  (Resp. at 125.)

During Plaintiff's employment, Westway sought to renew a contract with an insurance company that required certification of all Body Shop Technicians in welding.  (Compl. at 2.) Westway therefore sent Plaintiff and two other Body Shop Technicians, including Frankie Robinson ("Robinson") to take an I-CAR Steel GMA (MIG) Welding Qualification Test in March 2004.  (MSJ Br. at 6.)  Neither Robinson nor Plaintiff passed the March test, and both were allowed to retake the test in April 2004.  (MSJ Br. at 7, 10.)  Herron made several requests for Plaintiff's welding test results, as well as documentation of Plaintiff's I-CAR Collision Repair 3000 certification.  (MSJ Br. at 6-7.)  However, Plaintiff asserts that for various reasons, he was not able to provide the requested documentation.  (Resp. at 112-14.)  On June 18, 2004, Herron terminated Plaintiff, citing his lack of experience, low productivity, and lack of certification.  (Compl. at 2; MSJ Br. at 9.)  Herron attempted at that time to find Plaintiff work at two other dealerships doing paint repair work.  (MSJ Br. at 9.)

On December 21, 2004, Plaintiff filed this Title VII action pro se, naming Herron and Westway as Defendants.  Defendants filed the instant motion for summary judgment on January 20, 2006, asserting that Herron is not a proper party to this lawsuit and that Plaintiff failed to exhaust any harassment claims his complaint may be construed to allege.  Further, they assert that Plaintiff cannot establish a prima facie case of discrimination with respect to his termination, and that he cannot proffer any evidence of pretext to rebut the legitimate, nondiscriminatory reasons given for his termination, a lack of experience and certification.  On February 8, 2006, Plaintiff filed a 193-page response consisting of a number of documents, such as a copy of his job application, excerpts

from his deposition testimony, information from the Texas Work Force Commission regarding his claim for unemployment benefits, and various handwritten items. Defendants filed their reply on February 24, 2006, and Plaintiff filed a sur-reply on March 21, 2006. The parties also filed a number of motions to strike different filings related to Defendants' summary judgment motion. These matters are now before the Court and ripe for recommendation.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  "[T]he substantive law will identify which facts are material."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Id.* The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The pleadings, depositions, admissions, and affidavits, if any, must demonstrate that no genuine issue of material fact exists.  FED. R. CIV. P. 56(c).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323-24.  To carry this burden, the "opponent must do more than simply show . . . some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor.  *Anderson*, 477 U.S. at 249.

While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

Generally, the pleadings of a plaintiff who is proceeding *pro se* must be liberally construed in his favor. *See Hurd v. Doe*, 2003 WL 21640569, *3 (N.D. Tex. July 10, 2003). However, under Rule 56 of the Federal Rules of Civil Procedure, the court does not have an obligation to "'sift through the record in search of evidence' to support the nonmovant's opposition to the motion for summary judgment." *Crane v. Bowles*, 2004 WL 1057771, at *1 (N.D. Tex. May 6, 2004) (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994)). Instead, "the party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim." *Id.* (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).

## A.    Dismissal of Defendant Herron

First, Defendants argue that Plaintiff "was employed solely by Westway Ford, and not individually by Defendant Herron." (MSJ Br. at 14.)  As a result, they argue, the Title VII claims against Herron should be dismissed. *Id.*  In his response, Plaintiff appears to assert that Herron was his employer because he represented Westway and because Westway gave him the power to hire and

fire.  (Resp. at 110.)

"Title VII of the Civil Rights Act of 1964 makes it 'an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . [race].'" *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999) (quoting 42 U.S.C. § 2000e-2(a)(1)). Title VII defines the term employer to include "any agent" of an employer, and the Fifth Circuit has interpreted the term "any agent" to include an employee's immediate supervisor, where that individual exercises an employer's traditional rights, including hiring and firing. *Garcia v. Elf Atochem N. Am.*, 28 F.3d 446, 451 (5th Cir. 1994), *abrogated on other grounds by Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 118 (1998) (citing 42 U.S.C. § 2000e(b); *Harvey v. Blake*, 913 F.2d 226, 227 (5th Cir. 1990); *Hamilton v. Rodgers*, 791 F.2d 439, 442-43 (5th Cir. 1986).  However, the Fifth Circuit does not interpret Title VII as imposing individual liability for Title VII claims.  *Indest*, 164 F.3d at 262 (citing *Pfau v. Reed*, 125 F.3d 927, 935-36 (5th Cir. 1997)).  Rather, the Fifth Circuit has stated that "Congress's purpose in extending the definition of an employer to encompass an agent in Section 2000e(b) was simply to incorporate *respondeat superior* liability into Title VII." *Indest*, 164 F.3d at 262 (citing *Grant v. Lone Star Co.*, 21 F.3d 649, 652 (5th Cir. 1994); *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587 (9th Cir. 1993)).  "Thus, a Title VII suit against an employee is actually a suit against the corporation." *Indest*, 164 F.3d at 262.  Moreover, the Fifth Circuit "has also concluded that 'outside of an action against an officer personally, a plaintiff does not have an action against both the corporation and its officer in an official capacity.'" *Indest*, 164 F.3d at 262 (citing *Sims v. Jefferson Downs Racing Assoc., Inc.*, 778 F.2d 1068, 1081 (5th Cir. 1985)).  For this reason, a plaintiff cannot maintain a Title VII claim

against both a corporation and its agent in his official capacity, as the claim against the employer's agent would be redundant. *Indest*, 164 F.3d at 262 (citing *Sims,* 778 F.2d at 1081).

As a supervisor with the power to hire and fire Plaintiff, Herron constitutes Westway's agent for the purposes of Title VII liability. *See Garcia*, 28 F.3d at 451; *Lea-Stokes v. Hunt County Mental Health and Mental Retardation Ctr.*, 2005 WL 1875442, at *2 (N.D. Tex. Aug. 25, 2005) (Kinkeade, J.). However, Plaintiff may not recover against Herron individually. *See Indest*, 164 F.3d at 262; *Harvey*, 913 F.2d 226, 227-28. Plaintiff also cannot maintain a suit against both Westway as well as against Herron in his official capacity as Westway's agent. *See Indest*, 164 F.3d at 262. Accordingly, Herron is entitled to summary judgment with respect to Plaintiff's Title VII claims. Thus the only remaining defendant as to Plaintiff's Title VII claims is Westway, and the Court will address the remaining arguments related to those claims as those of Westway.

## B. **Harassment Claim**

Westway asserts that, to the extent that Plaintiff's complaint can be construed as raising a claim of harassment, Plaintiff has failed to exhaust his administrative remedies with respect to that claim. As a result, Westway argues that it is entitled to summary judgment on Plaintiff's harassment claim. (MSJ Br. at 14-15.) In his response, Plaintiff does not address Westway's failure to exhaust argument.

"Employment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court." *Taylor v. Books A Million, Inc*., 296 F.3d 376, 378-79 (5th Cir. 2002); *see also* 42 U.S.C. § 2000e-5(f)(1). "Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue." *Id*. at 379 (citing *Dao v. Auchan Hypermarket*, 96 F.3d 787, 788-89 (5th Cir.1996)). The filing requirement serves the purposes of

providing prompt notice to the employer of the EEOC charge and promoting private conciliation of the dispute.[3] *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398 (1982); *Sanchez v. Standard Brand Foods*, 431 F.2d 455, 466-67 (5th Cir. 1970)).

Here, Defendant acknowledges that Plaintiff filed an EEOC charge based on his termination. However, Defendant argues that the EEOC charge Plaintiff filed with respect to his termination contains no allegations of harassment, nor any facts putting Defendant or the EEOC on notice of an allegation of harassment.  (MSJ Br. at 15.)  A Title VII action is not strictly limited to the specific allegations within the plaintiff's EEOC charge, but also on any discrimination like or related to the allegations within the EEOC charge and within the scope of the EEOC investigation that would reasonably be expected to grow out of that charge.  *Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993) (citing *Fellows v. Universal Rests., Inc.*, 701 F.2d 447, 451 (5th Cir.1983)); see also *Thomas v. Texas Dep't of Crim. Justice*, 220 F.3d 389, 396 (5th Cir. 2000) ("The scope of a Title VII complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.") (citing *Young v. City of Houston*, 906 F.2d 177, 179 (5th Cir. 1990); *Sanchez*, 431 F.2d at 466).  In determining whether an EEOC investigation of harassment could reasonably be expected to grow out of Plaintiff's EEOC charge, the Court must look to the factual statement contained therein.[4]  *See Sanchez*, 431 F.2d at 462 ("the crucial element

---

[3]The requirement that an individual file an EEOC charge and otherwise satisfy the Title VII administrative exhaustion requirement prior to filing suit may be subject to waiver, estoppel, and equitable tolling under limited circumstances.  *See Zipes*, 455 U.S. at 392 ("[F]iling a timely charge of discrimination with the EEOC is . . . a requirement . . . subject to waiver, estoppel, and equitable tolling.").  Plaintiff does not argue that waiver, estoppel, or equitable tolling apply to his failure to include the issue of harassment in his EEOC charge; accordingly, the Court does not address whether any of these doctrines are applicable to Plaintiff's situation.

[4]To determine whether an investigation of an allegation not mentioned in the EEOC charge could reasonably be expected to grow out of that charge, some courts have indicated that under certain circumstances, a court may also look at documentation supporting the EEOC charge, such as an EEOC questionnaire.  *See Hayes v. MBNA Tech., Inc.*, 2004 WL 1283965, at *3-6 (N.D. Tex. June 9, 2004) (discussing different cases in which courts

of a charge of discrimination is the factual statement contained [in the EEOC charge].").

The Court thus turns to the factual statements within Plaintiff's EEOC charge to determine whether an investigation of harassment could reasonably be expected to grow out of that charge. In Plaintiff's EEOC charge, he states that the personal harm he suffered was that "[o]n or about June 18, 2004, I was terminated from my position of Body Shop Technician." (MSJ App. Exh. 2. at 12.) In that same charge, Plaintiff provides the following Discrimination Statement:

> I believe that I have been discriminated against because of my race, Black[,] in violation of the Title VII of the Civil Rights Act of 1964, as amended, in that a White male similarly situated co-worker does not have his Welders Certification License but was not terminated.

*Id*. In addition, the charge form directs individuals to fill out the earliest and latest dates that the alleged discrimination took place. *Id*. In that section, Plaintiff indicated that the discrimination he alleges took place at the earliest and latest on June 18, 2004. *Id*. These statements relate exclusively to Plaintiff's allegation that he was terminated based on his race. As a result, the Court finds that an investigation into harassment allegations could not reasonably be expected to grow out of Plaintiff's EEOC charge. *See, e.g., Daniel v. Dallas County Hosp. Dist*., 2006 WL 247898, at \*5 (N.D. Tex. Feb. 1, 2006) (concluding that while plaintiff's EEOC charge alleged sex discrimination based on termination and failure to receive a promotion, her sexual harassment claim was barred

---

in the Northern District of Texas did or did not examine the plaintiff's EEOC affidavit and/or questionnaire, and holding that "when determining whether a claim has been exhausted, the decision is to be based on the four corners of the EEOC charge, but the court may also consult related documents, such as a plaintiff's affidavit, her response to the EEOC questionnaire, and attachments to the response, when (1) the facts set out in the document are a reasonable consequence of a claim set forth in the EEOC charge, and (2) the employer had actual knowledge of the contents of the document during the course of the EEOC investigation."); *Johnson v. MBNA Hallmark Info. Servs*., 2003 WL 21418670, at \*2 (N.D. Tex. June 16, 2003) (comparing cases in which courts did and did not find that EEOC questionnaire could be considered as part of the charge). However, neither party provided any supporting documentation, and the Court thus need not consider whether the circumstances of this case would permit the examination of such documentation in determining whether an investigation of harassment could reasonably be expected to grow out of Plaintiff's EEOC charge.

because the charge made no specific mention of such a claim) (citing *Vincent v. Coates*, 2004 WL 1787838, at *2 (N.D. Tex. July 2, 2004); *Sabrah v. Lucent Tech., Inc.*, 1998 WL 792503, at *2 n. 3 (N.D. Tex. Nov. 6, 1998); *Thomas*, 220 F.3d at 395); *Johnson v. MBNA Hallmark Info. Servs.*, 2003 WL 21418670, at *2 (N.D. Tex. June 16, 2003) (finding that plaintiff's EEOC charge alleging only a failure to promote claim based on race and gender did not put EEOC or defendant on notice of claim for a racially hostile work environment or harassment); *Garrett v. Celanese Corp.*, 2003 WL 22234917, at *2 (N.D. Tex. Apr. 28, 2003) (finding that where plaintiff's EEOC charge alleged only receipt of a poor evaluation and placement on a performance improvement plan because of her race, nothing in charge put the employer or the EEOC on notice of a hostile work environment claim). Plaintiff has therefore failed to establish that a genuine issue of material fact exists with respect to Westway's assertion that he failed to exhaust his administrative remedies as to his harassment claim, and Westway is entitled to summary judgment on this claim.[5] *See Crawford v. Harris County Juvenile Prob. Dept.*, 31 Fed. Appx. 159 (5th Cir. 2001) (finding that district court properly granted summary judgment where there was no genuine issue of material fact as to whether the allegations in the plaintiff's EEOC charge reasonably related to an ADA claim where the EEOC charge referred only to race discrimination).

## C.   <u>Termination Claim</u>

Next, Westway contends that summary judgment is appropriate with respect to Plaintiff's claim that he was terminated because of his race in violation of Title VII, because Plaintiff can neither establish a prima facie case of discrimination nor proffer any evidence of pretext. (MSJ at

---

[5]Westway also argues that Plaintiff's harassment allegations "do not rise to the level of actionable harassment based on race." (MSJ Br. at 16.) The Court need not address that argument, because the Court finds that Westway is entitled to summary judgment on Plaintiff's harassment claim due to his failure to exhaust his administrative remedies.

6-7.)

### 1.      Title VII Framework

Under Title VII, it is "an unlawful employment practice for an employer. . .to discharge any individual. . .because of such individual's race."  42 U.S.C. § 2000e-2(a)(1).  Title VII also provides that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice."  42 U.S.C. § 2000e-2(m).

A plaintiff may establish a Title VII claim by presenting either direct or circumstantial evidence.  *Sandstad v. CB Richard Ellis, Inc*., 309 F.3d 893, 896 (5th Cir. 2002) (citing *Russell v. McKinney Hospital Venture*, 235 F.3d 219, 222 (5th Cir.2000)).  "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption."  *Sandstad*, 309 F.3d at 897 (citing *Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1217 (5th Cir.1995)).  In the instant action, Plaintiff has not presented direct evidence of race discrimination.  Thus, in order to establish his claim, he must create an inference of discrimination under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), as modified by *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305 (5th Cir. 2004).  *See Earle v. Aramark Corp*., 2006 WL 832507, at *2 (N.D. Tex. March 29, 2006) (citing *Rachid*, 376 F.3d at 312)).

As modified, the *McDonnell Douglas* framework consists of three stages.  First, "the plaintiff must still demonstrate a prima facie case of discrimination[.]"  *Rachid*, 376 F.3d at 312.  "[T]he defendant then must articulate a legitimate, non-discriminatory reason for its decision to terminate the plaintiff.[.]"  *Id*.  At the third stage, as modified by *Rachid* in light of the Supreme Court's decision in *Desert Palace v. Costa*, 539 U.S. 90, (2003), a plaintiff may proceed under one of two

-11-

alternatives: the pretext alternative or the mixed-motives alternative.[6]   *Id.* (citing *Rishel v. Nationwide Mut. Ins. Co.*, 297 F. Supp. 2d 854, 865 (M.D.N.C. 2003) (noting that accommodating *Desert Palace* only requires modification of the final stage of the *McDonnell Douglas* scheme) (other citations omitted).   Under the pretext alternative, the plaintiff must "offer sufficient evidence to create a material issue of fact. . .that the defendant's reason is not true, but is instead a pretext for discrimination[.]"   *Rachid*, 376 F.3d at 312. Under the mixed-motives alternative, plaintiff must "offer sufficient evidence to create a material issue of fact. . .that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic[.]"   *Id.*   "If the employee proves that discrimination was a motivating factor in the employment decision, the burden again shifts to the employer, this time to prove it would have taken the same action despite the discriminatory animus." *Richardson v. Monitronics Intern., Inc.*, 434 F.3d 327, 333 (5th Cir. 2005) (citing *Rachid*, 376 F.3d at 312.)

### 2.      Prima Facie Case

Applying the modified *McDonnell Douglas* framework to Plaintiff's termination claim, he must make a prima facie showing "'that []he (1) is a member of a protected class; (2) was qualified for [his] position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class,' or, in the case of disparate treatment, shows 'that others similarly situated were treated more favorably.'"   *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 513 (5th Cir. 2001) (quoting *Shackleford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999)) (other citations omitted).   Defendant concedes that Plaintiff is a member of a

---

[6]In *Desert Palace v. Costa*, the Supreme Court held that a Title VII plaintiff did not need to present direct evidence of discrimination in order to receive a mixed-motive jury instruction under 42 U.S.C. § 2000e-2(m).   539 U.S. at 101-102.   In *Rachid*, the Fifth Circuit applied that analysis to an Age Discrimination in Employment Act claim in the context of a summary judgment motion.   376 F.3d 305.

protected class and was subject to an adverse employment action.  (MSJ Br. at 19.)  In addition, Defendant concedes that a plaintiff in a Title VII civil rights action need only show that he has the minimum qualifications for a position.  Thus Westway assumes, for the purpose of its motion, that Plaintiff may have been qualified for the position of Body Shop Technician.  *Id.* (citing *Rubinstein v. Adm'rs. of the Tulane Educ. Fund*, 58 F. Supp. 2d 702, 711-12 (E.D. La. 1998), *aff'd in relevant part*, 218 F.3d 392 (5th Cir. 2000); *Steele v. SGS-Thomson Microelectronics*, 962 F. Supp. 972, 976 (N.D. Tex. 1997)).

While Westway does not dispute Plaintiff's ability to satisfy the first three prongs of the prima facie case, Westway argues that because Plaintiff cannot show that he was treated differently than similarly-situated employees, he cannot satisfy the fourth prong.  Westway presents evidence showing that the individual Plaintiff has alleged as being similarly situated, Robinson, was in fact not similarly situated, because Robinson was taking the welding test to become recertified in welding.  (MSJ App. Exh. 4 at ¶ 35.)  In addition, during the period Plaintiff was employed, Robinson's flag hours[7] averaged 65.81 hours per week, while Plaintiff's averaged 51.80 hours per week.  (MSJ App. Exh. 1 at 9.)  Westway also argues that even if Robinson and Plaintiff were similarly situated, they were both treated equally, as both received two opportunities to take the welding test.  (MSJ App. Exh. 4 at ¶ 36-37.)  In his response, Plaintiff does not address these arguments.  He also fails to present evidence rebutting that presented by Westway.  Plaintiff therefore has failed to show the existence of a genuine material issue of fact concerning whether a similarly-situated individual was treated more favorably.  *See Anderson*, 477 U.S. at 249.

---

[7]Herron explains in his affidavit that "'[f]lag hours' are hours that track the insurance companies' requirements for specific tasks.  For example, if an insurance company's guidelines provide that the bumper on a car should be repaired in three hours, but the proficiency of the Body Shop Technician allows the Technician to complete the task in one hour, the Technician receives credit for three hours of work."  *Id.* at ¶ 13.

However, Plaintiff may also establish a prima facie case of discrimination with respect to his termination by demonstrating that an individual outside the protected class was hired to replace him. Westway did not address this aspect of the prima facie case, which is the usual manner of showing discrimination in connection with a termination claim.[8]  *See Okoye*, 245 F.3d at 513 (stating that the fourth prong of a prima facie discrimination claim for termination requires a showing that a plaintiff was replaced by someone outside the protected class **or**, that others similarly situated were treated more favorably) (emphasis added).  Plaintiff appears to allege that he was replaced by an individual outside the protected class, based on his allegation that he was fired so that Herron could hire a friend of his.  (Compl. at 3.)  Though Plaintiff does not explicitly allege that Herron's friend was not African-American, he does allege that he was told by fellow Body Shop Technicians that Plaintiff was the only African-American to work in that position in thirteen years.  (Mag. Quest. Resp. to Quest. 1.)  Other than these allegations, Plaintiff offers no other support showing that an individual outside the protected class was hired to replace him.  Thus, Plaintiff has failed to show a genuine issue of material fact concerning the existence of a prima facie case of discrimination.  *Anderson*, 477 U.S. at 256-57; *see also Greenberg v. Crossroads Systems, Inc.*, 364 F.3d 657, 670 (5th Cir. 2004) (unsubstantiated allegations do not constitute competent summary judgment proof) (citing *Abbott v. Equity Group, Inc.*, 2 F.3d 613, 619 (5th Cir.1993).  However, even if the Court assumes, based on Plaintiff's allegations and for the purpose of making findings on this motion, that Plaintiff has made a satisfactory showing of a prima facie case, his claim nevertheless fails on the issue of

---

[8]In stating the elements of a prima facie case for race discrimination, Westway cites *Abarca v. Metropolitan Transit Authority*, 404 F.3d 938, 941 (5th Cir. 2005).  In *Abarca*, the plaintiff's primary issue was not his termination, but the defendant's requirement that he sign a reinstatement agreement in order to be allowed to return to work.  *Id*.  Thus, whether the plaintiff was replaced by someone outside the protected class was not relevant to his claim.  *Okoye*, on the other hand, states the proper elements of a prima facie case for race discrimination with respect to a termination claim.  245 F.3d. at 513.

pretext, as discussed below.

### 3.     Legitimate, Non-Discriminatory Reason for Termination

Having assumed, *arguendo*, that Plaintiff has made a prima facie showing, the Court now examines whether Westway has met its burden to produce evidence of a legitimate, nondiscriminatory reason for terminating Plaintiff.  *See Rachid*, 376 F.3d at 312.  Westway asserts that Plaintiff was fired because he "did not have the requisite level of experience or documented certifications to do the type of body work that was required for a Body Shop Technician."  (MSJ Br. at 21.)  In support, Westway points to Herron's affidavit, in which he states that he had observed that Plaintiff did not have the experience necessary to complete "complicated structural repairs involving severe structural damage to automobiles."  (MSJ App. Exh 4 at ¶ 25.)  Herron also states in his affidavit that on at least one occasion, he had to assign a different Body Shop Technician to complete repairs on a car with severe damage that Plaintiff was not able to fix.  *Id*. at ¶ 26.  Further, Herron states that he was unable to assign "repair jobs to [Plaintiff] that required measurements or frame structure repair because he was not able to perform such tasks. . . [and] never produced documentation that he was certified or qualified to produce such repairs."  *Id*. at ¶ 29.  Moreover, Herron asserts that from December 2003 to June 2004, Plaintiff's "flag hours were on average 14 hours lower than his nearest Body Shop Technician colleague and nearly 25 hours below the average for all of the Body Shop Technicians."  *Id*. at ¶ 15-16.  With the above-cited evidence, Westway has met its burden of production to provide a legitimate, nondiscriminatory reason for terminating Plaintiff.  Because Westway has met its burden, Plaintiff must now offer sufficient evidence creating a genuine issue of material fact that Westway's nondiscriminatory reason for terminating him was merely a pretext for discrimination, or that discrimination was a motivating factor in Westway's

decision to terminate him.  *See Rachid*, 376 F.3d at 312.

### 4. Pretext

To show pretext, Plaintiff must "demonstrate that the proffered reason was not the true reason for the employment decision."   Plaintiff succeed may do so "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  Tex. Dept. Community Affaris v. Burdine, 450 U.S. 248, 255 (1981); *see also Wallace v. Methodist Hosp. System*, 271 F.3d 212, 220 (5th Cir. 2001)(citation omitted).  "The evidence offered to counter the employer's proffered reasons must be substantial."  *Wallace*, 271 F.3d at 220 (citing *Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 402 (5th Cir.2001).  In addition, "[t]he plaintiff must put forward evidence rebutting each of the nondiscriminatory reasons the employer articulates."  *Wallace*, 271 F.3d at 220 (citing *Rubinstein v. Adm'rs of the Tulane Educ. Fund*, 218 F.3d 392, 400-01 (5th Cir. 2000); *Rutherford v. Harris County, Tex.*, 197 F.3d 173, 184 (5th Cir. 1999); *Clay v. Holy Cross Hosp.*, 253 F.3d 1000, 1007 (7th Cir. 2001)) .

Plaintiff does not directly respond to Westway's assertions regarding its stated reasons for terminating him, but does devote much of his response to detailing his efforts to obtain documentation from I-CAR, including his Collision Course 3000 certification and his welding test results.  (*See, e.g.*, Resp. at 1-10; 39-41; 44-50; 57-69; 145-49.)  However, Plaintiff's focus on the collision course certification appears to be misplaced.  To the extent that Herron cited Plaintiff's certification as a reason for terminating him, it was Plaintiff's failure to produce documentation of his certification either in the Collision Course 3000 or in welding that Herron focused on.  (MSJ App. Ex. 4 at ¶¶ 17, 23.)  While Plaintiff's submissions indicate that he ultimately obtained the

Collision Course 3000 certification, he produces no competent summary judgment that prior to his termination, he had in fact had demonstrated evidence of his certification in the Collision Course 3000 to Herron.[9] Thus, even if Plaintiff had any of his required certification prior to his termination, his failure to show Herron that documentation supports a finding that to the extent Herron cited Plaintiff's lack of certification as a reason for terminating him, such a reason was not pretextual. *See Steele*, 962 F. Supp. at 978 ("An employer may make an erroneous employment decision, so long as that decision is not made with a discriminatory motive.") (citing *Waggoner v. City of Garland*, 987 F.2d 1160, 1165 (5th Cir.1993); *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995)). Moreover, Plaintiff provides no evidence that he actually obtained his certification in welding. In fact, the copy he provides of the results of the second welding test indicate that he passed only five of six parts of the test. (Resp. at 15; 64.) In sum, then, Plaintiff's extensive discussion of issues related to his certification fails to demonstrate that Westway's stated reasons for his termination are pretextual.

Next, Plaintiff appears to assert that Westway's stated reasons are pretextual because Robinson was not removed for failing part of his welding test. (Resp. at 109; 162.) To establish pretext by showing disparate treatment, a plaintiff must show that the employer gave preferential treatment to an employee outside the protected class under "nearly identical" circumstances. *Little*

---

[9]The copy Plaintiff provides of his I-CAR Collision Course 3000 certificate is dated July 6, 2004, after Plaintiff's termination. (Resp. at 13.) Plaintiff argues that the listing of Westway's name above his home address on the paper with which the certificate was mailed evidences Westway's payment for the certification, and hence Herron's knowledge of that certificate. (Resp. at 12; 81-84.) He asserts that the appearance of Westway's name is also evidence that Herron worked in concert with I-CAR. (Resp. at 81-84; 149; 152-53.) Neither the post-termination dated certificate itself nor Plaintiff's conclusory assertions regarding an alleged conspiracy between Herron and I-CAR demonstrate that any of Herron's stated concerns about Plaintiff's certification were pretextual. Moreover, Plaintiff provides no evidence demonstrating that a faxed copy of his I-CAR transcript, dated April 16, 2004 and reflecting passage of the Collision Course 3000, was actually received by Westway or viewed by Herron. (Resp. at 112)

*v. Republic Refining Co.*, 924 F.2d 93, 97 (5th Cir. 1991) (quoting *Smith v. Wal-Mart Stores*, 891 F.2d 1177, 1180 (5th Cir. 1990); citing *Davin v. Delta Airlines*, 678 F.2d 567, 570-71 (5th Cir. Unit B 1982)).   As discussed above in evaluating whether Plaintiff established a prima facie case of discrimination, the Court found Plaintiff has failed to rebut the evidence proffered by Westway showing that he and Robinson were not similarly situated.[10]  Plaintiff therefore cannot establish that Robinson received preferential treatment under "nearly identical" circumstances.  *See Okoye*, 245 F.3d at 515 (finding that plaintiff could not demonstrate disparate treatment by citing to employees who allegedly committed acts of misconduct where she had not produced evidence that those employees were similarly situated to her).

In sum, Plaintiff has offered no evidence to rebut Westway's stated reasons for terminating him.  While Plaintiff devotes a considerable portion of his response to addressing issues related to his certification, he has not provided any evidence rebutting that proffered by Westway with respect to his low productivity and lack of experience.   Thus, he has failed to meet his burden to show pretext.  *See Wallace*, 271 F.3d at 220.   Where the plaintiff has offered no evidence to rebut the employer's facially benign explanations, no inference of discrimination can be drawn.  *See EEOC v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1447-1448 (5th Cir. 1995) (explaining that a plaintiff must tender factual evidence from which a fact-finder could reasonably conclude that the defendant's reasons were pretext for discrimination).   Consequently, Plaintiff has failed to show a genuine issue of material fact regarding pretext.

_____

[10]That evidence included a showing that Robinson took the welding test to become recertified in welding and had higher average flag hours.  (MSJ App. Exh. 1 at 9; Exh. 4 at ¶ 35.)

### 5.      Mixed-Motive[11]

Plaintiff can also survive summary judgment by offering sufficient evidence to create a material issue of fact that Westway's stated reasons for terminating him, while true, are only some of the reasons for its conduct, and that another "motivating factor" is Plaintiff's race.  *See Rachid*, 376 F.3d at 312.  Broadly construing Plaintiff's filings, he appears to allege that Herron's racial bias is evidenced by his having allegedly called Plaintiff a gang-banger and turned off his jazz music. (Mag. Quest. at 2-3.)  Plaintiff offers no evidence, such as an affidavit, to support these allegations. As stated above, unsubstantiated allegations do not constitute competent summary judgment proof. *Greenberg*, 364 F.3d at 670.  Plaintiff's subjective belief of Herron's discriminatory intent is insufficient to rebut Westway's legitimate, nondiscriminatory reason for its actions.  *See Earle v. Aramark Corp.*,2006 WL 83250, at *5 (N.D. Tex. Mar. 29, 2006) (finding that where plaintiff provided no evidence of defendant's discriminatory intent, other than conclusory statements and subjective belief, she failed to rebut defendant's legitimate, nondiscriminatory reason for its actions) (citing *Vance v. Union Planters Corp.*, 209 F.3d 438, 444 (5th Cir. 2000)).  Plaintiff has therefore failed to show that a genuine issue of material fact exists as to whether race was a motivating factor

---

[11]The Court notes that a number of other courts, both within and outside the Northern District of Texas, apply the modified *McDonnell Douglas* framework only where the plaintiff concedes that discrimination was not the sole reason for his discharge, and instead argues that discrimination was only a motivating factor, or where the plaintiff does not rely on the mixed-motive analysis.  *See Hughes v. Texas Keg Steakhouse & Bar, Inc*., 2006 WL 708158 (N.D. Tex. Mar. 21, 2006) (citing *Richardson*, 434 F.3d at 332-33 (5th Cir. 2005); *Pool v. U.S. Investigation Servs.*, 2005 U.S. Dist. LEXIS 31928, at *5 n. 1 (N.D. Tex. Dec. 6, 2005) (declining to engage in mixed-motive analysis because the plaintiff did not rely on that theory); *Walker v. Norris Cylinder Co.*, 2005 U.S. Dist. LEXIS 20465, at *11 n. 5 (N.D. Tex. Sept. 9, 2005) (same); *Bywaters v. S. Methodist Univ.*, 2006 U.S. Dist. LEXIS 4314, at *6-7 (N.D. Tex. Feb. 3, 2006) (same)).  *See also Wynn v. J.C. Penney Co., Inc.*, 2006 WL 722125, at *3 (E.D. Tex. Mar. 14, 2006) (stating that the mixed-motive analysis adopted by the Fifth Circuit in *Rachid* applies where the plaintiff concedes that discrimination was not the sole reason for the discharge, but that discrimination was a motivating factor).  In this action, Plaintiff does not rely on a mixed-motive theory.  And while he acknowledges that Westway gave reasons other than discrimination for terminating him, it is not clear whether he has conceded that Westway had any reason for discharging him other than alleged discrimination.  Thus, it is not clear whether the Court must apply the mixed-motive analysis to Plaintiff's termination claim, but does so in an abundance of caution.

in Westway's decision to terminate him.  Accordingly, Westway is entitled to summary judgment

on Plaintiff's termination claim.

**D.      Age Discrimination in Employment Act and Defamation Claims**

      In his response to Defendants' motion for summary judgment, Plaintiff appears to raise a

defamation claim as well as an Age Discrimination in Employment Act ("ADEA") claim.  (Resp.

at 99; 130-33.)  Defendants point out in their reply that Plaintiff raised his ADEA claim for the first

time in his summary judgment response.  (MSJ Reply at 1-2.)  Because Plaintiff failed to raise this

claims in his complaint or in his responses to the Magistrate's Questionnaire, the claim is not

properly before the Court.  *See Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113

(5th Cir. 2005) (citing *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir.1990)) ("A claim

which is not raised in the complaint but, rather, is raised only in response to a motion for summary

judgment is not properly before the court.")

      With respect to Plaintiff's defamation claim, Defendants also assert in their reply that

Plaintiff raised this claim for the first time in his summary judgment response.[12]  (MSJ Reply at 2-3.)

Alternatively, Defendants argue that even if the Court considered Plaintiff's defamation claim, it

fails because he has not offered proper summary judgment evidence in support.  *Id*. at 3.  One of

Plaintiff's responses to a question in the Magistrate's Questionnaire, regarding what relief he seeks

by this action, could be construed as raising a defamation claim.  Plaintiff alleged therein that Herron

had "destroyed" Plaintiff's career "by calling other shops that are close by my house and lying to

---

[12]Plaintiff's response to Defendants' motion for summary judgment contains a section labeled
"defamation" that includes a two page discussion of what defamation entails, bare assertions regarding Herron's
provision of references for Plaintiff, and part of an unidentified typed document with the word "defamation" written
at the top.  (Resp. at 130-33.)

them about me being a painter and not a body technician, and not knowing what I was doing[.]" (Mag. Quest. at 5.)  Thus, the Court will address the merits of Plaintiff's defamation claim.

"To prevail on a defamation claim, a private citizen plaintiff must establish (1) that the defendant published a false statement; (2) the false statement was defamatory (i.e. it damaged the plaintiff's reputation, exposing him to 'public hatred, contempt, ridicule, or financial injury'); and (3) the defendant made the statement with negligence as to its truth." *Fowler v. Capital Cities/ABC, Inc.*, 2002 WL 31230802, at *3 (N.D. Tex. 2002) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 73.001 (Vernon 1997) (defining defamation); *Green v. CBS, Inc.*, 286 F.3d 281, 283 (5th Cir. 2002); *Joseph v. Solutia, Inc.*, 193 F. Supp. 2d 989, 993 (S.D. Tex. 2002).  "Defamation claims must specifically state the time and place of the publication." *Jackson v. Dallas Indep. Sch. Dist.*, 1998 WL 386158, *5 (N.D. Tex.), *aff'd*, 232 F.3d 210 (5th Cir. 2000) (citing 5 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1309, at 698 (2d ed. 1990)).

Here, Plaintiff's allegations appear to relate to references Herron provided for Plaintiff at the time he was fired.  Herron states in his affidavit that during the meeting at which he terminated Plaintiff, Herron called individuals at two other dealerships to see if they had openings in their paint repair departments of their body shops for Plaintiff, and provided a good reference to those individuals.  (MSJ App. at ¶ 32-33.)  Plaintiff provides no competent summary judgment evidence refuting Herron's averments.  Rather, based on his response to the Magistrate's Questionnaire, he appears to urge the Court to interpret Herron's positive references with respect to Plaintiff's ability to work in a paint repair department as negative references with respect to Plaintiff's ability to work in a body repair department.  The Court cannot draw such an inference based solely on Plaintiff's conclusory allegations.

In his response, Plaintiff points to a separate basis for his defamation claim.  He includes an unidentified typed document with the word "defamation" written at the top.  (Resp. at 133.)  The document appears to be an excerpt of Westway's position statement in response to Plaintiff's EEOC charge.  (*See* Resp. at 122-124.)  The page of the statement Plaintiff appears to allege is defamatory states that "[i]t was this lack of productivity [low flag hours], and the fact that [Plaintiff] was not skilled at complicated repairs that led to his discharge. . ."  (Resp. at 133.)  The statement also provides that "it was [Plaintiff's] inability to make more complicated repairs in a timely manner, such as those involving structural damage[,] that le[]d to Mr. Herron's decision."  *Id.*

A statement must be false in order to be considered defamatory.  *See, e.g., Green*, 286 F.3d at 283.  Plaintiff presents no competent summary judgment evidence demonstrating that he did not have low flag hours or that he was skilled at making complicated repairs.  Moreover, Westway presents evidence that Plaintiff was terminated from a subsequent position he held in a body shop, at Service King, because he was "the lowest producing technician in hours" and because "quality and hours produced are lacking."  (MSJ App. Exh. 3 at 14.)  The Court thus finds that because Plaintiff has not shown that the statements he finds objectionable are false, he has failed to establish a defamation claim with respect to the contents of Westway's EEOC position statement.

Other than the references Herron provided during the termination meeting and the copy of Westway's EEOC position statement, Plaintiff has not pointed to any other allegedly defamatory statements made by Herron.  Plaintiff has also failed to allege the identity of the third parties to whom any other allegedly defamatory statements were made, or the time or place of such statements.  Thus, with respect to any other allegedly defamatory statements not specified, Plaintiff fails to meet the necessary elements for maintaining a defamation claim.  *See Fields v. Keith*, 174 F. Supp. 2d

464, 473 (N.D. Tex. 2001), *aff'd*, 273 F.3d 1099 (5th Cir. 2001); *Jackson*, 1998 WL 386158 at *5.

Accordingly, to the extent that Plaintiff's response to the Magistrate's Questionnaire could be

construed as raising a defamation claim, Defendants are entitled to summary judgment with respect

to that claim.[13]

**E.     Motions to Strike**

Defendants filed a motion to strike Plaintiff's response to their summary judgment motion.

Among other objections, they argue that  Plaintiff's response and the documents on which he relies

constitute improper summary judgment evidence.  To the extent that the Court has considered any

of the documents Defendants object to, the Court has found that Plaintiff has nevertheless failed to

create a material issue of fact as to any of his claims.  The court therefore denies Defendants' motion

to strike Plaintiff's response to their summary judgment motion as moot.  For this reason,

Defendants' and Plaintiff's motions to strike related filings are also properly denied as moot.

Additionally, Defendants move to strike Plaintiff's sur-reply.  To the extent the Court has considered

Plaintiff's surreply, the Court has found that therein, Plaintiff failed to create a material issue of fact

as to any of his claims.  That motion to strike is therefore also denied as moot.

### III.  CONCLUSION

For these reasons, the Court **RECOMMENDS** that Defendants Westway Ford and George

Herron's motion for summary judgment should be **GRANTED**.  In addition, the parties' motions

to strike are **DENIED** as moot.

---

[13]The Court thus need not reach Defendants' alternate argument that summary judgment is appropriate based on Tex. Labor Code § 103.003(a).

**SO RECOMMENDED** on this 21st day of April, 2006.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten (10) days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory or general objections.  A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court.  *See Thomas v. Arn*, 474 U.S. 140, 150 (1985)*; Perales v. Casillas*, 950 F.2d 1066, 1070 (5th Cir. 1992).  Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within ten (10) days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE